UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL CASE NO. 16-34-DLB-CJS
CIVIL CASE NO. 18-137-DLB-CJS

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                            **REPORT AND RECOMMENDATION**

PEDRO HIGAREDA                                                              DEFENDANT

\* \* \* \* \* \* \* \* \* \*

Pedro Higareda, *pro se*, moves to vacate, set aside or correct his sentence under 28 U.S.C. § 2255. (R. 67; *also see* R. 74, memorandum in support). The Government responded (R. 84), and Higareda replied (R. 86). Pursuant to local practice, this matter has been referred to the undersigned for consideration and preparation of a Report and Recommendation under 28 U.S.C. § 636(b). For the reasons below, it will be recommended that Higareda's § 2255 Motion (R. 67) be denied.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

In September 2016 Defendant Pedro Higareda was charged by way of federal indictment with conspiracy to distribute and possess with intent to distribute 50 grams or more of actual methamphetamine (Count 1); distribution of 5 grams or more of actual methamphetamine (Count 2); and aiding and abetting in possession of 50 grams or more of actual methamphetamine with the intent to distribute it (Count 3). (R. 13). In May 2017 Higareda pled guilty pursuant to a plea agreement (R. 49) to Count 1, conspiracy to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (*See* R. 47). At his August 24, 2017 sentencing

proceeding, based upon his guilty plea and conviction, Higareda was sentenced to 240 months in prison, to be followed by 10 years of supervised release, and the Court granted the Government's request to dismiss Counts 2 and 3 of the Indictment. (*See* R. 60; R. 61). Higareda did not appeal.

In July 2018 Higareda filed this pending § 2255 Motion (R. 67), later filing a Memorandum in Support of Motion Pursuant to Title 28 U.S.C. § 2255 to Vacate Conviction (R. 74). Higareda argues that his trial counsel was ineffective for failing to request a hearing under *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), and to challenge the probable cause finding in two state search warrants, one concerning his cell phone, the other placing a GPS device on his vehicle. (*See* R. 74, Page ID 203-11). The Government responds that Higareda's contentions are meritless. (R. 84).

## II.    ANALYSIS

Under § 2255(a), a federal defendant may seek habeas relief on grounds that his conviction or sentence violated the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, that the sentence exceeded the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. To succeed on a § 2255 motion alleging constitutional error, a federal defendant "must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)). To obtain relief for a non-constitutional error, he "must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir.1990)). In sum, a federal defendant must allege in his § 2255 motion that: (1) his conviction was the result of an error of constitutional magnitude; (2) his sentence was imposed outside of

statutory limits; or (3) there was an error of law or fact so fundamental as to render the proceedings invalid. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (citing *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). And he must prove his allegations by a preponderance of the evidence. *Pough*, 442 F.3d at 964; *Packett v. United States*, 738 F. App'x 348, 352 (6th Cir. 2018).

### A.     Higareda's ineffective-assistance claim is meritless

Higareda's ineffective-assistance claim has two parts. The first argues that counsel should have requested a *Franks* hearing based on allegedly false information presented in the search warrant affidavits. (*See* R. 74, Page ID 204-05). Within this part, Higareda adds that "had [he] been informed concerning the [*Franks*] hearing he would have elected to move for one instead of pleading guilty when he did." (*Id.* at 211). The second part to his argument assumes that a *Franks* hearing would have been granted and held, at which time counsel should have successfully moved to suppress the evidence seized from the search warrants. (*See id.* at 204-05).

As an initial matter, this Court notes that "[g]enerally, a voluntary and unconditional guilty plea 'bars any subsequent non-jurisdictional attack on the conviction.'" *Werth v. Bell*, 692 F.3d 486, 495 (6th Cir. 2012) (quoting *United States v. Corp.*, 668 F.3d 379, 384 (6th Cir. 2012)). After a guilty plea, a "defendant may challenge only the court's jurisdiction and the voluntary and intelligent character of the plea itself." *Werth*, 692 F.3d at 495. Accordingly, the only reason that Higareda's ineffective-assistance claim is not barred is because it implicates, albeit weakly, the voluntariness of his plea. *Raglin v. United States*, No. 19-5260, 2019 WL 4415212, at *2 (6th Cir. Sept. 6, 2019) ("Because this ineffective-assistance claim does not relate to the voluntariness of Raglin's plea, it too is barred by Raglin's voluntary and unconditional guilty plea.").

3

To successfully assert an ineffective-assistance-of-counsel claim, a federal defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, he must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. A federal defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id*. at 688.

In order to prove prejudice, a federal defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id*. at 695. Courts may approach the *Strickland* analysis in any order, and an insufficient showing on either prong ends the inquiry. *Id*. at 697. In the context of guilty pleas, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Williams v. United States*, 632 F. App'x 816, 821 (6th Cir. 2015) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Because Higareda's ineffective-assistance claim argues that trial counsel failed to competently litigate his Fourth Amendment claim, he "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the [outcome] would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). The Court looks to Higareda's attack on the warrant, not as a standalone claim, but to inform whether counsel was ineffective regarding the plea process. *See Williams v. United States*, 632 F. App'x 816, 821-24 (6th Cir. 2015).

The first search warrant sought Higareda's cell phone records. The supporting affidavit, dated April 1, 2016, from Agent Steve Kush provides as follows:

> **The Affiant states** information was gained concerning an unknown Hispanic male that goes by the moniker of "Toro" from a cooperating witness. The cooperating witness stated "Toro" was engaged in criminal activity of trafficking methamphetamine. Cooperating witness stated he/she knows this to be true from prior transactions of trafficking methamphetamine with "Toro." The cooperating witness stated he/she has been purchasing methampheta[mi]ne from "Toro" on a weekly basis for several months. Cooperating witness states he/she coordinates the transaction by contacting "Toro" via phone at 859-552-8894. The cooperating witness was able to substantiate this information with the use of a controlled call from the cooperating witness to "Toro" at the phone number 859-552-8894. Agent Kush monitored the phone call and heard conversation from "Toro" that is consistent with drug trafficking.
>
> Based on the above, the Affiant believes "Toro" is conducting ongoing methamphetamine distribution and is using his cellular telephone with assigned number **859-552-8894** as an instrument to further this criminal activity. Said records from this cellular service provider will enable Agents to further investigate this organization and use of real time GPS or Ping Locations will assist in identifying co-conspirators and locations used as well as alerting law enforcement of any cross-country trips to re-supply.

(R. 84-1, Page ID 268) (italics omitted).

Higareda argues that some of the information in the affidavit is false. Specifically, he contends that only one phone call exists that could have been the "controlled call" referred to in the affidavit—this call occurred on March 31, 2016.[1] (R. 74, Page ID 206). But in this call, he did not mention anything "that was consistent with drug trafficking"—there was "no explicit mention of any type of drugs, no employment of code words, no mention of past transactions, and no indication from the cooperating witness that he or she was even calling for the purpose of

---

[1] The Government believes that Higareda is arguing, in part, that the affidavit is false because it states that the controlled call occurred on April 1, 2016. (R. 84, Page ID 262). But Higareda's memorandum does not appear to be making such an argument; rather, he challenges the content of the call, not the representation of when it occurred. (R. 74, Page ID 206).

5

drugs." (*Id.*). Instead, Higareda alleges that he "merely told his caller that he was out of State and was waiting for something." (*Id.*).

Higareda argues that "[s]uch a general and ambiguous statement from [him] cannot support the averment that conversation consistent with drug trafficking went on." (*Id.*). Accordingly, the "statement was meant to mislead and constitutes a reckless disregard for the truth." (*Id.* at 207). He argues that his counsel should have pursued a *Franks* hearing to challenge Agent Kush's purportedly false statement and moved to suppress the seized evidence. (*See id.* at 207-08).

In the Sixth Circuit,

> [a] defendant is entitled to a *Franks* hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in the affidavit.

*United States v. Young*, 847 F.3d 328, 349 (6th Cir. 2017) (quoting *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015)). This requirement is "not easily met." *United States v. Summage*, 575 F.3d 864, 873 (8th Cir. 2009) (quoting *United States v. Gabrio*, 295 F.3d 880, 883 (8th Cir. 2002)). "Warrant affidavits carry with them 'a presumption of validity,' and 'the challenger's attack must be more than conclusory' and must allege 'deliberate falsity or reckless disregard [on the part] *of the affiant* . . . .'" *United States v. Stuart*, 507 F.3d 391, 396 (6th Cir. 2007) (quoting *Franks*, 438 U.S. at 171). Moreover, "allegations of deliberate falsehood or of reckless disregard for the truth . . . must be accompanied by *an offer of proof*." *Franks*, 438 U.S. at 171 (emphasis added).

Higareda's attack on Agent Kush's affidavit rests upon his claim that the controlled call did not mention anything that was consistent with drug trafficking. However, his mere denial about the content of the call is not enough to make the "substantial preliminary showing" required

6

for a *Franks* hearing. The Sixth Circuit's opinion in *United States v. Caldwell*, 114 F. App'x 178 (6th Cir. 2004), is instructive on this issue.

In *Caldwell*, the defendant argued that the district court should have held a *Franks* hearing based on his denial "that he participated in . . . two controlled drug purchases," referred to in a search warrant affidavit, because his denial showed that either "no information source existed" or the detective involved in the case "falsely characterized the information actually provided by the source." *Id.* at 181-82. However, the Sixth Circuit concluded that no *Franks* hearing was warranted because the defendant's denial did not constitute "a substantial showing that [the detective] knowingly and intentionally, or with reckless disregard for the truth, included false statements in the affidavit." *Id.* at 182; *see also United States v. Stone*, 676 F. App'x 469, 475 (6th Cir.), *cert. denied*, 137 S. Ct. 2280 (rejecting challenge to probable cause finding where defendant provided "only conclusory assertions that [statements in the search warrant affidavit] were intentionally false or made in reckless disregard of the truth").

Likewise, in this case, Higareda's "allegation that [Agent Kush] lied in the warrant affidavit . . . [is] conclusory and unsupported by any offer of proof." *Anderson v. United States*, 762 F.3d 787, 793 (8th Cir. 2014). The most that his denial of Agent Kush's statement does is to "set up a swearing contest"; importantly, such "denials . . . do not demonstrate a substantial possibility of affiant perjury" as to require a *Franks* hearing. *United States v. Southard*, 700 F.2d 1, 10 (1st Cir. 1983). Accordingly, Higareda's "counsel reasonably could have concluded that such a showing would fail to meet the *Franks* threshold," and was not ineffective for failing to request a *Franks*

hearing or move to suppress evidence seized from the first search warrant. *Anderson*, 762 F.3d at 793.[2]

Higareda also argues that counsel was ineffective for failing to challenge the second search warrant, which placed a GPS device on his vehicle. (R. 74, Page ID 208-10). The affidavit from Agent Gary Helton, dated April 19, 2016, provides as follows:

> In April of 2016 information was gained concerning an unknown Hispanic male that goes by the moniker of "Toro" from a cooperating witness. The cooperating witness stated "Toro" was engaged in criminal activity of trafficking methamphetamine. Cooperating witness stated he/she knows this to be true from prior transactions of trafficking methamphetamine with "Toro." The cooperating witness stated he/she has been purchasing methamphetamine from "Toro" on a weekly basis for several months. Cooperating witness states he/she would meet with Toro at several different locations in the Northern Kentucky Area. The cooperating witness stated that "Toro" would always drive a black Dodge Durango with tinted windows to the narcotics transactions.
>
> **Acting on the information received, Affiant conducted the following independent investigation:**
>
> The Affiant and members of the Northern Kentucky Drug Strike Force were able to use law enforcement databases to identify "Toro" as Pedro Higareda of Florence, Boone County Kentucky. The Affiant and members of the Northern Kentucky Drug Strike Force were able to identify Pedro Higareda's address as 8475 Partridge Dr. in Florence, Boone County, Kentucky. The Affiant was able to conduct surveillance on Pedro Higareda's residence and observed a 2006 Dodge Durango black in color with Kentucky Registration 063-VDG in the driveway of the residence with tinted windows.
>
> The Affiant checked police databases and found the Pedro Higareda was issued a citation on 12/14/2015 while driving the black 2006 Dodge Durango in Boone County Kentucky.
>
> The Affiant also conducted several controlled phone calls with Pedro Higareda and the cooperating witness during this investigation. On several occasions Pedro Higareda confirmed he was part of a narcotics trafficking organization, and would deliver crystal methamphetamine to the cooperating witness at any locations the cooperating witness picked.

---

[2] Because Higareda fails to meet the first requirement for a *Franks* hearing, the second need not be addressed.

8

> On April 14, 2016 Agent Kush with the Northern Kentucky Drug Strike Force contacted the Lexington Police Division Gang Unit and spoke with Detective Todd Phillips in reference to this investigation. Agent Kush was advised that Pedro Higareda is a known high ranking member of the Surenos Street Gang criminal organization. Detective Phillips advised the Lexington Police Division's Homicide Unit is currently investigating a homicide that Pedro Higareda may have some connection with.

(R. 84-2, Page ID 272).

Higareda argues that this affidavit also contains false information, specifically the statements that Agent Helton "conducted several controlled phone calls" and that "[o]n several occasions Pedro Higareda confirmed he was part of a narcotics trafficking organization." (R. 74, Page ID 209). But, as before, his blanket denials are insufficient to show that counsel was ineffective for failing to request a *Franks* hearing or move to suppress the evidence seized from the second search warrant. "Accordingly, [Higareda] has not shown by a preponderance of the evidence that there is a reasonable likelihood that, absent counsel's [purported errors relating to the warrant], he would not have pleaded guilty and instead would have insisted on going to trial." *Williams*, 632 F. App'x at 824.

### B. Higareda is not entitled to an evidentiary hearing

Higareda requests an evidentiary hearing in his reply brief. (R. 86, Page ID 286). However, no hearing is necessary "where the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995)). Here, the briefs on Higareda's § 2255 Motion, along with the record in this case, conclusively show that he is not entitled to the relief he seeks. *See Anderson*, 762 F.3d at 792 (concluding that "the § 2255 motion did not necessitate an

9

evidentiary hearing" where federal defendant simply alleged that affiant lied in the search warrant affidavit).

### III.  CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant.  A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255).  In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

In this case, reasonable jurists would not debate the denial of Higareda's § 2255 Motion or conclude that "the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Accordingly, it will be further recommended that a certificate of appealability be denied upon entry of the final order in this matter.

IV.  **CONCLUSION AND RECOMMENDATIONS**

For the reasons stated above, **IT IS RECOMMENDED** that:

1) Higareda's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 67) **be denied;**

2) Higareda's request in his reply brief for an evidentiary hearing (R. 86) **be denied;**

3) a Certificate of Appealability **be denied** in conjunction with the entry of a final order in this matter;

4) Judgment in favor of the United States **be entered** contemporaneously with the entry of the final order; and

5) this proceeding **be stricken** from the active docket.

The parties are directed to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Report and Recommendation, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b). Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Judge and Sixth Circuit Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Signed this 22nd day of January, 2020.



Signed By:
Candace J. Smith
United States Magistrate Judge

J:\DATA\habeas petitions\2255 IAC\16-34-DLB Higareda R&R final.docx